Duane F. NELSON, et al., Appellants,

v.

SHORT–ELLIOT–HENDRICKSON,
INCORPORATED,
Respondent,

City of Stillwater, Respondent.

No. A05–1740.

Court of Appeals of Minnesota.

June 27, 2006.

Jamie R. Pierce, Thomas G. Wallrich, Cyrenthia D. Jordan, Mansfield, Tanick & Cohen, P.A., Minneapolis, MN, for appellant.

Stephen F. Buterin, Mark J. Heley, Coleman, Hull & Van Vliet, P.L.L.P., Minneapolis, MN, for respondent Short–Elliot–Hendrickson, Incorporated.

Elisa Martha Hatlevig, James Golembeck, Patrick S. Collins, Jardine, Logan, & O'Brien, P.L.L.P., Lake Elmo, MN, for respondent City of Stillwater.

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and WILLIS, Judge.

## OPINION

RANDALL, Judge.

This is an appeal from summary judgment in a drainage-related dispute. Appellant-property owners argue (a) the district court erred in ruling that a prior action by appellants against the city is a basis for applying res judicata in this action where, they argue, part of the basis of the current action occurred after the ruling in the prior case and the claims are distinct; (b) fact issues exist regarding whether the city failed to maintain the easement in question; (c) the city is liable for damages caused by its failure to maintain the easement; (d) the district court mischaracterized the drainage-related hole on appellants' property as an improvement to real property, and hence erred in concluding appellants' suit against the project designer is barred by the statute of limitations in Minn.Stat. § 541.051, subd. 1(a) (2002); (e) fact issues exist regarding appellants' injury and hence summary judgment was inappropriate; and (f) the city's notice of review regarding the alternative theories for the relief it sought is premature because the district court did not address those theories. We affirm.

## FACTS

Since 1968, appellants Duane and Margaret Nelson have been owners of a parcel of land adjacent to Lily Lake (lake) located in the City of Stillwater (Stillwater), respondent. When purchased by appellants, the property was encumbered by an easement in favor of Stillwater for the purpose of maintaining storm-sewer outlets to the lake.

As a result of increased nutrient pollution in the lake, Stillwater employed Short Elliot Hendrickson, Inc. (SEHI), respondent, to conduct a feasibility study of the lake to find ways to improve its water quality. After consideration of various suggestions by SEHI, and based on the recommendations of an engineering firm, Stillwater opted to implement a plan referred to as the "Northwest Storm Water Diversion and Treatment System" (plan). A public hearing was held and Stillwater voted to adopt the plan.

The purpose of the plan was to reduce the amount of nutrients and sediment flowing into the lake, thereby improving its water quality. The plan required that an above-ground sedimentation pond be built to capture harmful nutrients and sediment before entering the lake. The plan placed the sedimentation pond on Stillwater's easement located on appellants' property. SEHI designed and constructed the sedimentation pond which was completed in December 1999.

In October 2000, appellants brought suit against Stillwater alleging temporary taking damages, nuisance, and trespass damages in the form of loss of reasonable use and occupation of their property. Both Stillwater and appellants brought motions for partial summary judgment. Appellants argued that the sedimentation pond and its accompanying structures exceeded the scope of Stillwater's easement and were not permissible uses under the easement. Stillwater argued that the pond and its structures were a reasonable use of

the dominant estate and fell within the scope and purpose of the easement. The district court granted Stillwater's motion for partial summary judgment, dismissing appellants' claim for inverse condemnation, finding that the sedimentation pond was an essential component of the storm-sewer water quality treatment program and within the scope and purpose of the easement.

Stillwater sought dismissal of appellants' remaining claims of nuisance and trespass. Appellants moved the district court to amend its findings regarding the nature of the sedimentation pond and its impact on their property. Appellants argued that the pond was not merely an improvement to Stillwater's storm sewer system, but that the pond was a holding pond or catch basin that was not permitted under the terms of the easement. The district court rejected appellants' argument and granted Stillwater's motion to dismiss appellants' nuisance and trespass claims.

In September 2003, appellants again brought suit against Stillwater and SEHI. Appellants alleged that Stillwater failed to maintain its easement and that SEHI was negligent in failing to adequately examine the impact of the plan and designing the sedimentation pond. SEHI and Stillwater both moved the district court for summary judgment dismissing appellants' claims. SEHI argued that the two-year statute of limitations governing improvements to real property set forth in Minn.Stat. § 541.051 (2002) barred appellants' claim, that appellants failed to comply with the strict affidavit requirements of Minn.Stat. § 544.42 (2002), and that the doctrine of res judicata barred appellants' claim. Stillwater argued that appellants' claims were untimely and barred by the doctrine of res judicata, that it was entitled to discretionary immunity, and that appellants failed to present evidence establishing the elements of cau-

sation and damages necessary to support their claims of negligence.

The district court granted the summary judgment motion of SEHI and Stillwater, dismissing appellants' complaint. In granting SEHI's motion, the district court found that the sedimentation pond was an integrated component of the storm-sewer system and an improvement to real property under Minn.Stat. § 541.051. Thus, the district court dismissed appellants' claims as untimely under the statute, concluding that appellants first discovered any claimed injury from the sedimentation pond in 2002. The district court did not consider SEHI's other arguments. As to Stillwater's motion, the district court found that the doctrine of res judicata barred appellants' claims and did not consider any remaining defenses. This appeal followed.

Appellants argue the following: (1) the district court erred in ruling that the prior action by appellants against Stillwater is a basis for applying res judicata in this action. Appellants claim part of the basis of the current action occurred after the ruling in the prior case and the claims are distinct; (2) the district court mischaracterized the drainage-related hole on appellants' property as an improvement to real property, and hence erred in concluding appellants' suit against SEHI is barred by the statute of limitations in Minn.Stat. § 541.051, subd. 1(a); (3) genuine issues of material fact exist regarding their injuries and therefore summary judgment in favor of respondents was not proper; and (4) Stillwater's notice of review regarding the alternative theories for the relief it sought is premature because the district court did not address those theories.

## ISSUE

I.  Did the district court err by ruling that res judicata barred appellants' claim against Stillwater?

■■■■■■■■■■■■

II. Did the district court err by ruling that the sedimentation pond on appellants' property was an improvement to real property under to Minn.Stat. § 541.051, subd. 1(a) (2002)?

III. May this court review alternative theories raised by respondents when the district court did not base its order on the alternative theories?

## ANALYSIS

### I.

Appellants argue that their previous suit against Stillwater, premised on whether Stillwater had the right to construct the sedimentation pond and drainage hole on their property, is distinct and separate from their present claim alleging that Stillwater failed to maintain its easement. We affirm the district court's conclusion that res judicata bars appellants' new claims.

■■■■ The doctrine of res judicata is designed to prevent the relitigation of causes of action already determined in a prior action. *Beutz v. A.O. Smith Harvestore Prods., Inc.*, 431 N.W.2d 528, 531 (Minn.1988). A subsequent claim is barred under the doctrine of res judicata when: (1) the earlier claim involved the same claim for relief; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter. *State v. Joseph*, 636 N.W.2d 322, 327 (Minn.2001). All four prongs must be met in order for res judicata to apply. *See id.* at 327–29. The applicability of res judicata is a question of law, which this court reviews de novo. *Id.* at 326.

Appellants' second claim against Stillwater involved identical parties and there was a final judgment on the merits. We now consider whether the earlier claim involved the same claim for relief, and if appellants had a full and fair opportunity to litigate the present matter.

■■■■ Appellants argue that the causes of action are different in the two claims and do not involve the same claim for relief. Res judicata involves circumstances that give rise to a claim and precludes a second claim for the same cause of action "not only as to every matter which was actually litigated, but also as to every matter which might have been litigated therein." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn.2004) (quotation omitted). To determine if appellants' second claim is barred under res judicata, we focus on whether the second claim arises out of the same set of factual circumstances as the first claim. *Id.* When determining whether two suits involve the same claims, we inquire whether both claims arise from the "same operative nucleus of facts." *Nitz v. Nitz*, 456 N.W.2d 450, 451 (Minn.App.1990) (quotation omitted).

We conclude that both claims arose out of the "same operative nucleus of facts." Both claims arise from: (a) appellants' ownership of specific property; (b) Stillwater's easement on the property; (c) the building and installing of storm-water pipes, two large manholes, and a holding pond on appellants' property; and (d) alleged damages as a result of Stillwater's responsibilities. Appellants now seek compensation for damages sustained as a result of an alleged inadequate plan.

Appellants argue that their first claim of inverse condemnation required different evidence to sustain in comparison to their second claim for breach of duty to maintain or negligence in failing to act to maintain the water quality storm-sewer project. Although there may be instances where

different claims as a result of a cause of action need to be supported by different evidence, this is not the case here. In their first claim involving inverse condemnation, appellants sought damages for nuisance. Although under a different theory, appellants' negligence theory under their second claim would involve the same or similar evidence as their nuisance theory under their first claim. Under their nuisance theory, appellants alleged that they sustained damages "in the amount of the reasonable value and use and occupation" of their property as a result of Stillwater's actions. Under their negligence theory, appellants allege that they are "no longer able to utilize" their property and that its value has "suffered a diminution" as a result of Stillwater's actions. Under both theories, appellants claim to have suffered damages. To prevail on their claims, appellants would need to present evidence showing how they are unable to use their property and how their property has diminished in value. It is reasonable to conclude that under both claims, similar, if not identical, evidence would have to be presented. Appellants are using different theories to bring a similar claim to avoid res judicata. *See Nitz,* 456 N.W.2d at 452; *see also Antonson v. Ekvall,* 295 Minn. 558, 559, 204 N.W.2d 446, 446–47 (1973) (where the factual setting was the same in a former tort action, the plaintiff was barred from litigating the same basic claims under a contract action).

Appellants could have brought their negligence claim in their first complaint. Appellants testified that they were aware of the cause of their injuries as a result of alleged negligence in December 1999 and certainly by the summer of 2000, prior to the commencement of their first claim. Appellants had the opportunity to litigate the matter.

SEHI argues that res judicata also prevents appellants from bringing suit against it. Because the district court did not make findings or rule on this issue, we do not review it.

## II.

▉ The district court found that "[i]t appears well settled and clearly held that storm sewer systems qualify as improvements to real property" under Minn.Stat. § 541.051. The district court also found the sedimentation pond, is "undeniably an integrated component of the city storm sewer system, designed to catch and treat run-off from the sewers before it can reach the lake." The district court concluded that because appellants had first discovered their injury arising from the alleged defective condition of the pond more than two years prior to commencement of their claim, their action was time barred under the statute. Appellants argue that the pond and structures associated with the pond do not constitute "actual improvement to their real property."

### *Improvement to Real Property*

Minn.Stat. § 541.051, subd. 1(a) states:

... no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury or, in the case of an action for

contribution or indemnity, accrual of the cause of action, nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction. Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use the improvement for the intended purpose.

We conclude the district court properly found that the sedimentation pond and its structures are improvements to real property for purposes of Minn.Stat. § 541.051.

■ This court uses a common sense approach when determining whether something is an improvement to real property for purposes of the statute of limitations. *Williams v. Tweed,* 520 N.W.2d 515, 518 (Minn.App.1994), *review denied* (Minn. Oct. 27, 1994). While statutes that limit damages based on improvements to real property are construed strictly, court, nonetheless, give effect to the plain meaning of the statute's words without resort to technical legal constructions of its terms. *Kline v. Doughboy Recreational Mfg. Co.,* 495 N.W.2d 435, 439 (Minn.App.1993). The sedimentation pond benefits the land.

■ Appellants' position is centered on the argument that the sedimentation pond "has not enhanced the capital value" of their real property but has instead "diminished the value" of their real property. Citing to this court's decision in *Taney v. Indep. Sch. Dist. No. 624,* appellants argue that the Minnesota Supreme Court has defined an improvement as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repair." 673 N.W.2d 497, 504 (Minn.App.2004) (quota-

tion omitted), *review denied* (Minn. Mar. 30, 2004). Enhancement of monetary values, although a factor, is not essential. *See Kline,* 495 N.W.2d at 439; *Thorp v. Price Bros. Co.,* 441 N.W.2d 817, 820 (Minn.App.1989), *review denied* (Minn. Aug. 15, 1989).

Appellants also cite this court's decision in *Johnson v. Steele–Waseca Co-op. Elec.* where this court concluded that a pole installed on a farmer's property by the electric company to properly distribute power to the farmer, did not constitute an improvement to real property. 469 N.W.2d 517, 519–20 (Minn.App.1991), *review denied* (Minn. July 24, 1991).

In *Johnson,* an electric company installed equipment onto a farmer's barn and a pole located on the farmer's property. *Id.* at 518. The purpose of the equipment on the pole was to bring power to the barn. *Id.* As a result of stray voltage, the farmers' cows' milk production was affected. *Id.* The farmer brought suit against the electric company for injuries as a result of its equipment. *Id.* The electric company argued that under Minn.Stat. § 541.051 the equipment and pole were improvements to real property and therefore, the farmer's suit was time barred. *Id.*

In our decision, we ruled that the equipment installed onto the farmer's barn was an improvement to real property because it added value to the farmer's barn. *Id.* at 519. However, this court determined that the pole and pendant equipment, both owned and used by the electric company to distribute electric power, was not an improvement to the farmer's real property. *Id.* This court further reasoned that the pole "stands independently on appellants' property and serves the distribution purposes of the cooperative. This equipment enables [the electric company] to increase its electric service to [the farm]. Rather

than being an improvement to [the farmer's] property, this equipment is an addition to [the electric company's] distribution system." *Id.*

Based on *Johnson*, appellant argues that the sedimentation pond is an addition to Stillwater's system to control water quality, just like the pole was an addition to the electric company's distribution of service. On the other hand, respondent argues that the courts have consistently held that storm-sewer systems are an improvement to real property. *See, e.g., Ocel v. City of Eagan*, 402 N.W.2d 531, 534 (Minn.1987); *Capitol Supply Co. v. City of St. Paul*, 316 N.W.2d 554, 555 (Minn.1982); *Nolan and Nolan v. City of Eagan*, 673 N.W.2d 487, 496 (Minn.App.2003), *review denied* (Minn. Mar. 16, 2004); *Matter v. Nelson*, 478 N.W.2d 211, 213 (Minn.App.1991).

First, the decision in *Johnson* is distinguishable in regards to SEHI. In *Johnson*, this court noted that the electric company "owns and has maintained continuous control" over the pole. 469 N.W.2d at 520. This court stated:

> Minn.Stat. § 541.051 limits the time to bring an action in order to protect from suits those who install or create the improvement and then *surrender control of it.* We do not interpret Minn.Stat. § 541.051 to shelter from liability an electric power company that installs and *maintains control* of an electric pole and transformer, especially when the purpose is to distribute power. Minn.Stat. § 541.051 does not protect the *installer/owner from its own ongoing negligence.*

*Id.* (emphasis added).

Per the language of *Johnson*, SEHI never "maintained control" of the pond or was the owner of the pond responsible for its "own ongoing negligence." SEHI surrendered control of the pond to Stillwater. In their brief, appellants state that if the sedimentation pond is "determined to be an improvement under [Minn.Stat. § 541.051], [it] is an improvement possessed by [Stillwater]." In fact, appellants do not allege any ongoing negligence by SEHI, only by Stillwater.

We conclude that the pond was an improvement to real property. Although the sedimentation pond may or may not have increased the dollar value of appellants' property, it improved the quality and betterment of Lily Lake by improving its water quality. Its construction involved the expenditure of labor and money, and it was designed to make Lily Lake more useful and valuable. As the district court found, the pond was an "integrated component of the city storm sewer system." Presumably, the pond increased the value of appellants' lakeside property by improving the quality of Lily Lake and making water recreation more feasible.

### Discovery of Injuries

■ Because we conclude that the sedimentation pond is an improvement to real property, appellants' claims for negligence against SEHI are barred by Minn.Stat. § 541.051, subd. 1(a), appellants did not bring their claim within two years of discovery of their injuries.

> Minn.Stat. § 541.051, subd. 1(a) states:
>
> no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal . . . arising out of the defective and unsafe condition of an improvement to real property . . . shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury. . . .

The statute further instructs "a cause of action accrues upon discovery of the injury . . . ." Minn.Stat. § 541.051, subd. 1(b). Because appellants discovered their injury more than two years before they filed their lawsuit, their negligence claims under subdivision 1(a) are untimely.

Appellants testified that they began to experience problems with the sedimentation pond in the summer of 2000, three years before they filed suit. Mr. Nelson testified that prior to the pond being built, he used his physics book and determined that the pond was not big enough. Mr. Nelson noticed the sedimentation pond smelled like a cesspool right after the pond was completed. He also testified that he noticed dead fish and muskrats in the pond "all years" meaning every year since the pond was built. Mr. Nelson testified that his former son-in-law, a geotechnical engineer, whose work involved storm-water sewer systems, opined that the pond was inadequate both before it was built and immediately after. Mrs. Nelson also testified that she first noticed a mosquito problem and foul smells in the spring and summer of 2000.

There is an abundance of testimony from both appellants showing that they first became aware of problems in December 1999, and by the summer of 2000. The present suit did not commence until September 2003. Under Minn.Stat. § 541.051, subd. 1(a), appellants' claims against SEHI are untimely.

## III.

The district court dismissed claims against Stillwater based on res judicata although Stillwater presented alternative theories. Stillwater advanced alternative independent theories including statute of limitations pursuant to Minn.Stat. § 541.051 and municipal statutory immunity pursuant to Minn.Stat. § 466.03 (2002).

The district court considered these grounds but in view of the case for dismissal based on res judicata and in the interest of judicial economy, the district court found it unnecessary to issue a written analysis on these theories.

The district court dismissed claims against SEHI based on Minn.Stat. § 541.051 although SEHI presented alternative theories. The district court failed to make a written analysis on alternative theories because, "of the conclusive statute of limitations issue." On appeal, SEHI argues that this court should also affirm the district court's decision because appellants failed to serve an affidavit of expert of review within 60 days after receiving SEHI's demand for expert certification.

■ Appellants argue that because the district court did not make a determination on respondents' alternative theories, this court may not review claims based on the alternative theories. This court can, if it needs to, affirm summary judgment on alternative theories presented but not ruled on at the district court level. *See, e.g., Winkler v. Magnuson,* 539 N.W.2d 821, 827 (Minn.App.1995), *review denied* (Minn. Feb. 13, 1996); *Myers Through Myers v. Price,* 463 N.W.2d 773, 775 (Minn.App.1990), *review denied* (Minn. Feb. 4, 1991). However, because our conclusion is the same as the district court on the issues the district court considered, we choose not to analyze alternate theories raised to the district court but not ruled upon.

## DECISION

Appellants' allegations against Stillwater are barred by res judicata. Appellants' claim involves the same claim for relief as their prior claim, involves the same parties, a final judgment on the merits was made in their prior claim, and appellants had a full and fair opportunity to litigate

the matter in their prior claim. Appellants realized their damages prior to their first claim and should have litigated the theories raised in this claim in their prior claim.

The sedimentation pond is an improvement to real property; thus, appellants' claim against SEHI is barred by the statute of limitations under Minn.Stat. § 541.051, subd. 1(a).

**Affirmed.**